**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Elizabeth AIELLO, Claimant–Appellant.**

**No. 1175, Docket 89–6281.**

United States Court of Appeals,
Second Circuit.

Argued April 26, 1990.

Decided Aug. 6, 1990.

Michael D. Rips, New York City (Wright Manning & Rips, New York City, on the brief), for claimant-appellant.

Edward T. Ferguson, III, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty., Pamela L. Dempsey, Asst. U.S. Atty., New York City, on the brief), for plaintiff-appellee.

Before VAN GRAAFEILAND, NEWMAN, and KEARSE, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal concerns primarily the esoteric question of whether appellate jurisdiction exists over a judgment in a civil forfeiture action in the absence of a stay of execution of the judgment. Elizabeth Aiello appeals from the October 11, 1989, judgment of the District Court for the Southern District of New York (Kevin Thomas Duffy, Judge) forfeiting to the United States real and personal properties claimed by Aiello and her husband, Antonino. The properties were alleged to have been purchased with proceeds from a narcotics enterprise operated by Antonino, *see* 21 U.S.C. § 881(a)(6) (1988), and some were alleged to have been used in connection with the enterprise, *see id.* § 881(a)(7) (1988). We conclude that appellate jurisdiction exists, at least as to all assets that have not been sold, and that, on the merits, forfeiture was properly ordered.

### Background

Between 1984 and 1986 the United States filed seventeen civil forfeiture actions against land, buildings, bank accounts, and jewelry owned by either or both of the Aiellos or by corporations of which one of them was a principal. The Government also indicted Antonino for various narcotics offenses, including operating a continuing criminal enterprise in violation of 21 U.S.C. § 848 (1988). Elizabeth was charged with harboring a fugitive and perjury. Both were convicted. Antonino was sentenced to life imprisonment plus 140 years and fined $550,000. Elizabeth was placed on probation for three years. The trial evidence overwhelmingly established a massive heroin and cocaine distribution network run by Antonino in New York City. The enterprise provided Antonino with enormous profits, which the Government alleges were placed in the bank accounts and used to purchase the real and personal properties sought to be forfeited.

Elizabeth filed claims in twelve of the seventeen forfeiture actions, all of which had been consolidated. She claimed an ownership interest in the properties that were the subject of these twelve actions and alleged that she was entitled to the "innocent owner" defense afforded by 21 U.S.C. § 881(a)(6), (7). The Government successfully moved for summary judgment. Once the judgment was entered and the automatic ten-day stay period expired, Fed.R.Civ.P. 62(a), the Government proceeded to enforce its judgment. The money in the forfeited bank accounts was deposited into the United States Treasury, and the judgment was recorded in the appropriate land records against the forfeited real estate. Thereafter, Elizabeth moved in the District Court for a stay, which Judge Duffy denied. Several months later, during which no motion for a stay was made in this Court, the Government sold two of the forfeited properties. After hearing oral argument, we granted a stay pending disposition of the appeal.

### Discussion

The Government asserts that appellate jurisdiction was extinguished once control of the forfeited properties passed from the District Court to the United States. It is not entirely clear from the Government's brief whether it believes this occurred immediately upon the expiration of the ten-day stay provided by Rule 62(d) or after the Government acted to enforce its judgment by recording the judgment on the land records and moving the funds in the seized accounts into the Treasury. In support of its challenge to appellate jurisdiction, the Government asserts two proposi-

tions: (1) removal of a *res* from a court's territorial jurisdiction terminates a court's *in rem* jurisdiction, and (2) once forfeited property is released from a court's control, the court loses jurisdiction over the property.

The first proposition has been widely invoked as to movable property, *see, e.g., United States v. One Lear Jet Aircraft, Serial No. 35A–280,* 836 F.2d 1571, 1573 (11th Cir.1988) (in banc) (airplane); *Bank of New Orleans and Trust Co. v. Marine Credit Corp.,* 583 F.2d 1063, 1067–68 (8th Cir.1978) (equipment), though it would seem to have no application to real estate, at least land and any buildings not destroyed. The second proposition, which is of less certain validity,[1] has also been frequently asserted as to movable property, *see, e.g., United States v. $2,490.00 in U.S. Currency,* 825 F.2d 1419, 1420 (9th Cir. 1987) (money); *United States v. $79,000 in United States Currency,* 801 F.2d 738, 739 (5th Cir.1986) (same); *United States v. 66 Pieces of Jade and Gold Jewelry,* 760 F.2d 970, 973 (9th Cir.1985) (jewelry), and as to real property that has been sold by the prevailing forfeiture judgment plaintiff, *United States v. Tit's Cocktail Lounge,* 873 F.2d 141, 144 (7th Cir.1989). Both propositions are subject to an exception for property removed or released accidentally,

fraudulently, or improperly, *see The Rio Grande,* 90 U.S. (23 Wall.) 458, 465, 23 L.Ed. 158 (1874); *United States v. $57,-480.05 United States Currency,* 722 F.2d 1457, 1458 (9th Cir.1984).[2]

At most, these propositions concern *in rem* jurisdiction and do not necessarily determine whether an appellate court, asked to review a forfeiture judgment, may do so in the exercise of *in personam* jurisdiction over the prevailing plaintiff. That prospect was considered and rejected by a 6–5 vote of the in banc court in *One Lear Jet Aircraft,* 836 F.2d at 1574–77; *id.* at 1577 (Vance, J., with whom Hatchett and Anderson, JJ., join, dissenting); *id.* at 1580 (Clark, J., with whom Anderson, J., joins, dissenting); *id.* at 1584 (Edmondson, J., dissenting). We think the dissenters in *One Lear Jet* have the better of the argument. As they point out, the concepts of continuing territorial presence and control in forfeiture actions derive from the admiralty fiction of a ship's personality, a legal construct of dubious validity. *See* G. Gilmore & C. Black, *The Law of Admiralty,* 616 (2d ed. 1975) ("Abandonment of the fiction would seem to have been [*sic*] a clear gain for legal thought."). With the force of those concepts diminishing in admiralty, *see Continental Grain Co. v.*

---

**1.** The proposition that jurisdiction exists only as long as property remains within the "control" of the court, rather than merely within its territorial jurisdiction where it is amenable to control, seems premised on the view that the initial exercise of jurisdiction requires process, such as seizure, that brings the property within the control of the court. There are Supreme Court statements on both sides of this proposition. *Compare Pennington v. Fourth National Bank,* 243 U.S. 269, 272, 37 S.Ct. 282, 283, 61 L.Ed. 713 (1917) ("The only essentials to the exercise of the State's power are presence of the *res* within its borders, its seizure at the commencement of proceedings, and the opportunity of the owner to be heard."), *with Roller v. Holly,* 176 U.S. 398, 406, 20 S.Ct. 410, 412, 44 L.Ed. 520 (1900) ("[I]f a lien already exists, whether by mortgage, *statute,* or contract, the court may proceed to enforce the same precisely as though the property had been seized upon attachment or execution.") (emphasis added). Professors Wright and Miller read *Pennoyer v. Neff,* 95 U.S. (5 Otto) 714, 24 L.Ed. 565 (1877), as not requiring seizure to invoke a court's *in rem* jurisdiction. C.A. Wright & A.R. Miller, 4 *Federal Practice*

and *Procedure,* § 1070 at 427 (2d ed. 1987). Recently, we affirmed a judgment of forfeiture in a case where seizure was found to have been invalidly made. *See United States v. The Premises and Real Property at 4492 South Livonia Road,* 889 F.2d 1258, 1265–66 (2d Cir.1989). If seizure bringing property within the court's control is not required to initiate the exercise of *in rem* jurisdiction, the surrender of control would seem not to terminate the court's jurisdiction, provided the property remains amenable to the court's process.

**2.** If it is so that a court normally loses *in rem* jurisdiction when the property is removed from its control, it is difficult to understand how the court may nonetheless exercise jurisdiction to determine if the property was removed accidentally, fraudulently, or improperly, thereby satisfying the exception to its loss of jurisdiction. Perhaps, in determining whether the "exception" applies, the court is really exercising *in personam* jurisdiction over the party who accidentally, fraudulently, or improperly removed the property.

*Barge FBL–585*, 364 U.S. 19, 23, 80 S.Ct. 1470, 1473, 4 L.Ed.2d 1540 (1960); *Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel*, 569 F.2d 330, 334 & n. 4 (5th Cir.1978), they surely ought not to be routinely invoked to deny citizens an opportunity for appellate review of judgments forfeiting their property to the Government. In general, we agree with the late Judge Vance that the United States, "[h]aving submitted itself to the jurisdiction of the court, ... should not be allowed to escape" appellate review of the judgment it has obtained. 836 F.2d at 1579.

 Even if we may review a forfeiture judgment in the exercise of *in personam* jurisdiction over the United States, we encounter two further obstacles in this case. In the absence of a stay, the Government caused the funds in the forfeited bank accounts to be deposited in the Treasury. The Government suggests that we are powerless to order return of these funds because this would entail an impermissible payment of funds without appropriation by Congress, in violation of the Appropriations Clause. U.S. Const. art. I, § 9, cl. 7. Though the Ninth Circuit has supported this view, *see United States v. $57,480.05 United States Currency*, 722 F.2d at 1459, we disagree. The Appropriations Clause concerns "public funds arising from taxes, customs, etc." *Varney v. Warehime*, 147 F.2d 238, 245 (6th Cir.1945). We do not believe that funds collected by the United States pursuant to a judgment of the District Court are insulated by the Appropriations Clause from return to the rightful owner in the event of a reversal of that judgment simply because the funds are held in the Treasury during the course of the litigation.

 The second obstacle arises as to two of the forfeited properties because the Government sold them during the interval after expiration of the automatic ten-day stay and prior to issuance of this Court's stay. In the view of the Seventh Circuit, a sale of forfeited property, in the absence of a stay of the forfeiture judgment, destroys appellate jurisdiction as to the sold proper-

ty. *See United States v. Tit's Cocktail Lounge*, 873 F.2d at 144. While no stay was in effect, the Government was fully entitled to sell the properties. It is not clear whether the sales impair our appellate jurisdiction or simply defeat the claimant on the merits in the absence of any challenge to the bona fides of the sale transactions. In either event, Mrs. Aiello secures no relief. Her claims with respect to all of the forfeited assets other than the two sold properties remain for consideration.

 Having labored so extensively to afford Mrs. Aiello her day in this Court, we conclude, on examination of the merits, that her day will be extremely brief. The Government abundantly discharged its obligation to establish probable cause for the forfeitures, at which point it became Mrs. Aiello's burden to demonstrate the existence of a genuine issue precluding summary judgment. *See United States v. One Parcel of Property Located at 15 Black Ledge Drive*, 897 F.2d 97, 101 (2d Cir.1990). Though alleging an innocent owner defense, she presented no affidavits presenting facts in support of her claim. She made no averment that untainted proceeds were used to purchase any of the properties. Her lawyer's affirmation, alleging only what certain witnesses had told him they would say, is insufficient. *See Wyler v. United States*, 725 F.2d 156, 160 (2d Cir.1983). Her deposition testimony denies knowledge of her husband's involvement in drugs in 1976, a date that precedes the years in which he operated his narcotics enterprise. Totally lacking was the "detailed factual substance in support of her claim of ignorance," *United States v. One Parcel of Property Located at 15 Black Ledge Drive*, 897 F.2d at 102.

The judgment of the District Court is affirmed.