UNITED STATES of America, Plaintiff,

v.

UNITED STATES CURRENCY IN THE SUM OF THREE HUNDRED NINETY-THREE THOUSAND NINE HUNDRED SIXTY-SEVEN ($393,967) DOLLARS, MORE OR LESS; Certain Items of Jewelry; and the Premises and Real Properties Located at 175–20 Wexford Terrace Apartments 3V, 9G, and 16M, Jamaica Estates, New York, and All Shares of Stock Which Have Been Allocated to Said Cooperative Apartments, Defendants.

No. CV 90–3068 (ADS).

United States District Court,
E.D. New York.

Sept. 30, 1991.

**44**

Andrew J. Maloney, U.S. Atty., E.D.N.Y., Brooklyn, N.Y. (Arthur P. Hui, of counsel), for plaintiff.

Martin L. Schmukler, P.C., New York City by Martin L. Schmukler, for defendants.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

In this civil forfeiture action, the Court is asked to determine whether the default of the claimant, Nidia Campos ("Campos"), should be excused and whether the Court should grant her motion to vacate a decree of forfeiture and enlarge the time within which to submit a claim and to file an answer. For the reasons set forth below, the claimant's motion to vacate the decree of forfeiture is denied.

## BACKGROUND

The claimant Campos is currently incarcerated in relation to a criminal action pending before the Honorable Carol Amon, and entitled *United States v. Edgar Vargas, et al.*, docketed at CR–89–564. She is named as a defendant in that action.

The defendant property in this *in rem* action consists of currency in the amount of $393,967, items of jewelry, two cooperative apartments and cooperative shares for those apartments. The Government initiated this forfeiture action under the Comprehensive Drug Abuse Prevention and Control Act.

In its complaint, the Government alleges that the defendant currency was "intended to be used to facilitate the sale, manufacture, transportation and/or distribution of a controlled substance in violation of 21 U.S.C. § 841 *et seq.*" (¶¶ 23, 26). In addition, the Government contends that the defendant premises, real properties, and shares of stock allocated to the cooperative apartments "constituted the proceeds of the sale ... of a controlled substance ..." and were used "... and/or intended to be used to commit or to facilitate the sale ..." (¶¶ 29, 32) and were therefore subject to forfeiture to the United States under 21 U.S.C. § 881(a)(6) and (a)(7).

Pursuant to Rule C(3) of the Supplemental Rules for Certain Admiralty and Maritime Claims, the clerk of the district court issued a warrant of arrest for service on the defendant property ordering the United States Marshal to direct the defendant to appear, in accordance with Rule C(6), within ten days of service of the notice to interpose a claim. The defendant was also directed to file a responsive pleading either within twenty days of filing the claim or within thirty days of service, whichever was less (Rule B(3) of the Supplemental Rules of Admiralty and Maritime Claims).

According to the Government, on September 26, 1990, the United States Marshals Service personally served copies of the verified complaint *in rem* on potential claimants Nidia Campos and Jose Rincon–Maya, who were both incarcerated at the Metropolitan Correctional Center (Declaration in Opposition to Motion to Vacate Decree of Forfeiture ¶ 4). Pursuant to Rule C(4), notification of the action was published in the *New York Post* on October 1, 2 and 3, 1990 (¶ 7).

No responsive pleadings were filed and on December 4, 1990, a default was entered in this Court against the property. On motion of the Government, a default judgment was ordered pursuant to Rule 55(b) (¶¶ 9, 10).

## PROCEDURAL SETTING

On May 20, 1991, counsel for the claimant Campos moved to vacate the decree of forfeiture and order of delivery that was entered upon the default pursuant to Federal Rules of Civil Procedure 55(c) and 60(b). Counsel also seeks an order permitting him to serve (1) a claim within 10 days, and (2) an answer to the complaint within 20 days, pursuant to Rule C(3) of the Supplemental Rules for Certain Admiralty and Maritime Claims.

In his affidavit in support of the motion, counsel for the claimant contends that unlike his prior contacts with the Government in handling two previous forfeiture proceedings for claimant Campos, he was not notified of the present forfeiture proceeding despite his written request to be informed. The relevant allegations are as follows:

"4. On or about December 26, 1989, pursuant to 21 U.S.C. § 881, the Drug Enforcement Administration issued a Notice of Seizure, addressed to claimant at a Queens, New York address, with respect to $27,875.00 in United States Currency seized in this District on or about August 9, 1989.

At that time, claimant was in custody pursuant to a Detention Order issued in the criminal action.

5. The agency Notice of Seizure was referred to me as CAMPOS' attorney, and I thereafter timely served and filed a Verified Claim of Ownership executed by CAMPOS and a Cost Bond in the amount of $2,788.00 ... The Verified Claim and Cost Bond were accompanied by a letter, addressed to the Chief Counsel of the Asset Forfeiture Section of the D.E.A., signed by me, *and containing a request that any further correspondence concerning this matter be sent to me as counsel to CAMPOS* [emphasis supplied].

6. Thereafter the D.E.A. sent written acknowledgement of this Claim to me, as CAMPOS' attorney, at my office address. Copies of the administrative Notice of Seizure, CAMPOS' Verified Claim, my cover letter, and the D.E.A. acknowledgment are annexed hereto collectively as Exhibit A.

Counsel for Campos goes on to allege a second notice of seizure with respect to jewelry valued at $42,280. Campos apparently received the notice at the Metropolitan Correctional Center in Manhattan and referred it to counsel. The attorney summarizes the same procedure as noted above in handling this second notice. Based on these actions, counsel for Campos addressed a letter to Assistant United States Attorney Linda B. Lakhdhir in the Eastern District of New York, in which he requested

"that a copy of the agency's seizure notice be sent to me as CAMPOS' counsel. In the same letter I also requested that if the agency had any other plan for forfeiture proceedings, I be notified" (¶ 9).

Having complied with the appropriate procedures and having advised the Government that he wished to receive notice, counsel for Campos additionally alleges that:

"10. ... I respectfully submit that by virtue of these various mailings, with enclosures, both the D.E.A. and the United States Attorney's Office for this District were on actual notice that I was counsel to CAMPOS in both the criminal action *and* in connection with any and all forfeiture proceedings, administrative and/or judicial.

11. Upon information and belief, on or about August 31, 1990, the United States Attorney ... commenced the instant *in rem* proceeding, pursuant to 21 U.S.C. § 881(a)(6) and (7).

12. ... counsel for the plaintiff thereafter caused a copy of the pleadings to be delivered to claimant by mail, at the Metropolitan Correctional Center ... the pleadings first actually came into claimant's possession sometime in the latter part of September, 1990.

13. Although the government mailed copies of the pleadings to claimant ... in complete and utter disregard of my several letters both to the D.E.A. and to ... Linda B. Lakhdhir, the government never served me, as CAMPOS' attorney, with a copy of the pleadings.

Thereafter, on October 9, 1990, counsel for Campos wrote to Judge Amon, who was presiding over the criminal action, indicating that he first became aware of the pendency of these forfeiture proceedings when he visited Campos at the Metropolitan Correctional Center on September 28, 1990. Counsel advised Judge Amon that he and his associate had tried on several occasions to communicate with counsel for the government to obtain a stay of the

proceeding to allow for the filing of a claim and answer. Counsel requested a stay until the end of October because he was engaged in a "lengthy, federal criminal trial in the Central District of California" (¶ 14). A second letter went to Judge Amon on October 12, 1990, reiterating his request and refuting the Government's October 9, 1990 letter.

At that point, according to counsel for Campos,

"17. ... I received no further communications from either the government or the Court, and no endorsements or other indications that my requests for a stay or an enlargement of time had been granted or denied by the Court. At no time did I receive written notice of any application for a default judgment under Rule 55(b)(2).

18. Finally, on January 8, 1991, via fax, the government provided me with a copy of the Decree of Forfeiture and Order of Delivery entered on December 4 1990, which is the subject of this motion."

In support of Campos' claim of a meritorious defense, counsel notes that on April 2, 1991, Campos was acquitted after a jury trial of all violations of Title 21. Based on the acquittal, counsel maintains that Campos "possesses a viable claim to property and assets seized pursuant to Title 21" (¶ 20).

The Government in opposing the motion maintains that Campos has never filed a verified claim despite the fact that *she* received copies of the verified complaint in September 1990. In referring to the allegations made by counsel for Campos, the Government responds that counsel never filed a verified claim by the end of October as he had represented by letter. The Government also states that despite counsel's admission that he received a copy of the decree of forfeiture on January 18, 1991, he did not seek to vacate the decree for an additional five months (Plaintiff's Memorandum of Law at p. 2).

In support of its claim that the default should not be vacated, the Government posits the following arguments: (1) the *res* no longer exists and the Court therefore lacks

jurisdiction over the claim; (2) Campos has not demonstrated any excusable neglect and therefore has not standing to contest the forfeiture; (3) Campos has not asserted any meritorious defenses nor substantiated them with credible evidence; and (4) Campos received sufficient notice to satisfy due process and statutory requirements.

## DISCUSSION

Federal Rule of Civil Procedure 60(b) provides in relevant part that:

"the court may relieve a party or a party's legal representative from a final judgement, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect ... or (6) any other reason justifying relief from the operation of the judgement." (Fed.R.Civ.P. 60[b])

Recently, the Second Circuit clarified this standard and outlined this rule in detail:

"We have noted, however, 'courts have gone beyond the bare wording of the rule and established certain criteria which should be considered in deciding whether the designated standards have been satisfied. These criteria ... include (1) whether the default was willful; (2) whether the defendant has a meritorious defense; and (3) the level of prejudice that may occur to the nondefaulting party if relief is granted.'" (*Wagstaff-El v. Carlton Press Co.*, 913 F.2d 56, 57 [2d Cir.1990], cert. denied [— U.S. ——], 111 S.Ct. 1332 [113 L.Ed.2d 263 [1991]] [quoting *Davis v. Musler*, 713 F.2d 907, 915 [2d Cir.1983]]; see also *Marziliano v. Heckler*, 728 F.2d 151 [2d Cir.1983]; *Traguth v. Zuck*, 710 F.2d 90, 94 [2d Cir.1983]; *Brown v. DeFelippis*, 695 F.Supp. 1528, 1530 [S.D.N.Y.1988])

A motion to vacate a default judgment pursuant to Fed.R.Civ.P. 60(b) is left primarily to the discretion of the district court (*Davis v. Musler, supra,* 713 F.2d at p. 912; *United States v. Erdoss*, 440 F.2d 1221, 1223 [2d Cir.1971], *cert. denied,* 404 U.S. 849, 92 S.Ct. 83, 30 L.Ed.2d 88 [1971]). As the court in *Musler* noted, "default judgments implicate sharply conflicting policies" (*id.*); see 10 C. Wright, A. Miller and

M. Kane, *Federal Practice and Procedure: Civil*, § 2693 at p. 477–93 [1983] ). Rule 60 is to be liberally construed in the context of a judgment of default in view of the absence of a trial on the merits (*Davis v. Musler, supra; Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 403 [5th Cir.1981]; *United States v. $22,640.00 In United States Currency*, 615 F.2d 356, 360 [5th Cir. 1980] ).

■ In order to determine whether vacating the default and setting aside the forfeiture decree in this case is appropriate, the Court must examine the three factors outlined in *Wagstaff–El v. Carlton Press Co., supra*, 913 F.2d at p. 57: (1) was the default willful? (2) does the claimant Campos set forth a meritorious defense? (3) what level of prejudice, if any, may accrue to the government?

### A. *Willful Default*

■ To merit relief in the instant case, claimant Campos needs to prove that her failure to timely file a notice of claim and answer was the result of excusable neglect. Based on the uncontroverted facts presented by counsel for Campos in filing this motion, it is clear that the claimant had been involved in at least two prior forfeiture proceedings in which counsel had followed the appropriate procedures, including the posting of a supersedeas bond pursuant to Fed.R.Civ.P. 62(b). In those proceedings, Campos claimed an ownership interest in the properties that were the subject of the actions.

It is also clear that counsel for Campos had communicated with the Government and made them aware of his representation and the need to communicate with him if there were to be further proceedings. Although Campos herself did not respond, she did give the notice she received from the Government to her attorney when he subsequently visited her at the Metropolitan Correctional Center. It was reasonable to assume that, based on the prior history, Campos believed her counsel had received the notices and responded to them.

In addition, counsel for Campos related relevant facts that his time was occupied with a protracted trial in California during the period in question. It is understandable that Campos was not able to communicate with counsel at various times during that period. Such circumstances have been found to constitute excusable neglect (*United States v. $135,290 United States Currency*, 750 F.Supp. 359 [N.D.Ill.1990]. It is also apparent that counsel could not respond to that which he did not have. He had to ask for the notice and finally received it by means of a FAX communication.

Based on counsel's representations, this Court concludes that Campos and her attorney did not willfully ignore communications. Further, counsel for the claimant took quick action to correct the situation once it was made known to him. Although counsel states that he subsequently received no further communications from the Government or the court in response to his request for a stay, he proffers no further explanation for the additional delay in filing this motion. That gap in and of itself is not sufficient to defeat the Court's finding that there was excusable neglect in this case.

### B. *Meritorious Defense*

■ The threshold question in this case is whether counsel for Campos has set forth a meritorious defense. To begin with, there is no affidavit from the claimant Campos attesting to her interest in the property.

Further, in regard to this prong of the test, counsel for Campos makes only the barest assertions. In his affidavit, counsel states:

> "20. Under indictment CR–89–564 (CBA), the claimant, NIDIA CAMPOS, was tried before a jury, and on April 2, 1991, she was acquitted on any and all violations of Title 21. She was found guilty of a violation of 18 U.S.C. § 1956, and is presently awaiting sentencing. As such, in the absence of a criminal verdict on the Title 21 counts, it appears that CAMPOS possesses a viable claim to property and assets seized pursuant to Title 21.

**48**

21. ... Certain of the assets and property recited in the Complaint ... belonged to CAMPOS, who was, therefore, their lawful owner prior to their seizure and arrest in connection with this action."

In his accompanying three-page Memorandum of Law, counsel for Campos fares no better in setting forth a meritorious defense. In an already terse format, counsel spends 99% of his time on the "excusable neglect" issue and reserves one sentence to set forth a meritorious defense— "... since she otherwise possesses a viable claim to the property and/or assets that are the subject of this action ..." (Defendant's Memorandum of Law at p. 3).

On the other hand, the Government has alleged facts which meet its burden of showing probable cause to believe that the monies seized were intended to be used to purchase and distribute a controlled substance. The complaint avers that the money was seized from Costa Rica Realty, a business owned and operated by Campos along with documents relating to narcotics transactions (¶¶ 17, 18). The Complaint states that a co-defendant, Edgar Vargas, informed the police that 25 kilograms of cocaine were to be delivered to Nidia Campos (¶ 11). The Government has also demonstrated that a grand jury indicted Campos and that a jury convicted her of one count of conspiring to launder narcotics proceeds.

■ The Government is correct in its assertion that because of the different standards and burdens of proof between civil and criminal proceedings, the Government is not precluded from forfeiting the defendant properties in a civil action even though Campos was acquitted of conspiracy to distribute and intent to possess cocaine.

■ An acquittal in a related criminal prosecution does not preclude the United States from seizing and forfeiting property in a civil action pursuant to 21 U.S.C. §§ 881(a)(6) and (a)(7) (*One Lot Emerald Cut Stones and One Ring v. United States*, 409 U.S. 232, 234–35, 93 S.Ct. 489, 491–92, 34 L.Ed.2d 438 [1972]; *United States v. One 1986 Mercedes Benz*, 660 F.Supp. 410, 414 [S.D.N.Y.1987], *aff'd*, 846 F.2d 2 [2d Cir.1988]; *United States v. One Rural Lot*, 739 F.Supp. 74, 77 [D.Puerto Rico 1990]). Even if the claimant had been acquitted of all charges, the Government would not be precluded from bringing such an action (*United States v. One Rural Lot*, *supra*, at p. 77).

By her silence, Campos herself has failed to deny a single averment made by the Government. Her attorney is similarly culpable in failing to allege the bare minimum of information required to set forth a meritorious defense. In addition, neither Campos nor her counsel has even questioned whether the Government has met its burden of establishing probable cause. The claimant has therefore not met her burden of setting forth any allegations which would constitute a meritorious defense to this forfeiture action, if proven at trial. Although counsel has not been granted an opportunity to submit an answer, it is clear on the face of the papers in support of this motion that the claimant has not met her threshold burden of setting forth a meritorious defense. The motion papers are "couched solely in conclusionary language" and are "nothing more than a verbatim excerption of the statutory language" of 21 U.S.C. § 881 (*see United States v. $55,-518.05 In United States Currency*, 728 F.2d 192 [3d Cir.1984]).

In *United States v. $55,518.05 In United States Currency*, the court stated that "[i]f we allow the setting aside of a default judgment on the mere recitation of the relevant statutory language ... then we will be establishing a new right to automatically set aside any default judgment if counsel is diligent enough to quote the applicable statute or rule of civil procedure" (*id.* at p. 196). Judge Higgenbotham made a particularly apt observation that has relevance to the instant case, as follows:

"In this case, Golden's silence speaks ever so loudly. For most Americans, $55,518 is not casual pocket change which one leaves on the bureau at night. Golden offers no explanation as to what

was the specific source of the $55,518. One might ask: Did he recently withdraw this money from his bank account? Did he inherit it? Was he in a check-cashing business requiring such cash for legitimate customers? Were these profits from recent legitimate earnings? *An affirmative answer to any of the above questions might raise a meritorious defense.* Yet, upon scanning his answer and pleadings, one cannot find a word suggesting even one alleged fact that might provide an inference of a meritorious defense. Default judgments cannot be set aside simply because of a lawyer's artistry in offering ambiguous conclusions" (*id.* at p. 196) [emphasis supplied].

Judge Higgenbotham's inquiry concerning the source of the $55,518 is significant. One can only imagine the response in the instant case where the funds seized total $393,967, in addition to the forfeiture of jewelry and real property.

No such explanations have been provided by counsel or by Campos, no other affidavits supplied, and no additional facts proffered. On the record in this case, the Court concludes that the claimant has failed to set forth a meritorious defense, sufficient to ground a motion to vacate a default.

Unlike the situation in *Davis v. Musler, supra,* where the Court of Appeals determined that a hearing was necessary before denying the defendant's motion to vacate a default judgment, this motion can be determined based on the papers submitted to the Court. The claimant's motion papers do not raise substantial questions of law and fact (*id.*). On the contrary, they are straight-forward and contain few disputed facts. In contrast to *Musler,* this Court has delineated the standards it has applied in denying the motion and has outlined the arguments pressed by the claimant (*id.* at p. 913). The reasons for the denial are fully set forth. We therefore expect that there need not be any guesswork regarding the grounds upon which this Court relies. The reason for the denial of the claimant's motion is a total lack of even an arguable meritorious defense.

## C. *Prejudice to the Government*

Based on the fact that the claimant has failed to set forth a meritorious defense, the Court does not reach the issue of whether the Government would be prejudiced if the Court were to permit counsel for Campos to file a verified claim and answer at this juncture. Suffice it to say that on this record, the Government has not demonstrated any prejudice.

■ However, the Court does draw the Government's attention to the fact that the "no *res,* no jurisdiction" rule is no longer good law in this jurisdiction (*see U.S. v. Aiello,* 912 F.2d 4 [2d Cir.1990], *cert. denied,* —— U.S. ——, 111 S.Ct. 757, 112 L.Ed.2d 777 [1991]). In *Aiello,* the Second Circuit adopted the position of the dissenters in *United States v. One Lear Jet Aircraft, Serial No. 35A–280,* 836 F.2d 1571, 1573 (11th Cir.1988), *cert. denied,* 487 U.S. 1204, 108 S.Ct. 2844, 101 L.Ed.2d 881 (1988), that there is no good reason why the Government should be permitted to "insulate itself from the appellate process by wrapping itself in the mantle of an admiralty fiction designed at an earlier time to meet a problem totally unrelated to present day civil forfeiture proceedings" (*United States v. One Lot of $25,721.00 In Currency,* 938 F.2d 1417, 1419 [1st Cir.1991]). Although certain realities must be faced when the assets are real property, this doctrine is particularly onerous in a currency forfeiture proceeding. As the court in *One Lot of $25,721.00 In Currency* noted:

> "The government has possession and control of the currency from the time it seizes it. The execution of the judgment merely transfers it from one government pocket to the other. Basing jurisdiction on what pocket contains the currency is nothing more than a shell game. In addition to being bereft of logic it is also unfair" (*id.*).

In sum, the Government's argument here, that the monies have been deposited with the United States Department of the Treasury and are therefore irretrievable, is without merit.

## CONCLUSION

Because counsel for the claimant has failed to set forth a meritorious defense, his motion to set aside the entry of default and to vacate the forfeiture decree must be denied.

SO ORDERED.