**UNITED STATES, Plaintiff,**

v.

**ALL RIGHT, TITLE AND INTEREST IN FIVE PARCELS OF REAL PROPER-TY AND APPURTANCES THERETO KNOWN AS 64 LOVERS LANE, et al., Defendants.**

No. 91 Civ. 5715 (GLG).

United States District Court,
S.D. New York.

Aug. 16, 1993.

Mary Jo White, U.S. Atty., S.D.N.Y., White Plains, NY by Bart G. Van De Weghe, Asst. U.S. Atty., for plaintiff.

Gerald B. Lefcourt, P.C., New York City (Gary G. Becker, of counsel), for claimant Munson.

Ricken, Goldman, Sussman & Blythe, Kingston, NY (Robert L. Ricken, of counsel) for claimant Robbins.

## MEMORANDUM DECISION

GOETTEL, District Judge.

### I. FACTUAL BACKGROUND

Claimant Joseph Munson moves this court to dismiss the in rem complaint against five parcels of real estate in which Mr. Munson owns in whole or part. The parcels include his personal residence in which he and his family live as well as four parcels containing multi-family homes and a laundromat. The Claimant also seeks to suppress certain physical evidence, the fruits of wiretaps, and post-arrest statements.

The government commenced this *in rem* civil forfeiture action in August 1991. Count I of the verified complaint seeks forfeiture of the properties pursuant to 21 U.S.C. § 881(a)(6) on grounds that all six properties constitute proceeds traceable to exchanges of controlled substances. Count II alleges that two of the properties, Lovers Lane and Decatur Street, were subject to forfeiture pursuant to 21 U.S.C. § 881(a)(7) because they were used to commit or facilitate commission of a violation of Title 21.

The summonses and verified complaint were served upon the defendant real properties by the Marshals Service in September 1991. Joseph and Kim Munson subsequently filed a "Verified Notice of Claim" claiming ownership of the properties. The government contests whether the claim was properly verified.

Notice of the forfeiture action was published beginning in November 1991. The only other claim filed was by Richard Robbins regarding the Decatur Street property.

The allegations in the complaint are based upon an investigation conducted by the Putnam County Sheriff's Narcotics and Westchester County Drug Enforcement Task Force. The investigation allegedly established that Joseph Munson was responsible for the distribution of large amounts of marijuana and heroin. The complaint also alleges that Mr. Munson invested profits from the sale of these drugs in real estate and businesses. The investigation relied upon information obtained from undercover purchases by confidential informants, telephone conversations intercepted by wiretaps, physical surveillance, statements by informants, and county land records.

The complaint alleges that narcotics-related telephone conversations occurred at the Lovers Lane property and the laundry business was purchased to "wash" the drug money. In August 1991, pursuant to a search warrant, the Task Force seized a small quantity of marijuana from an office in the house at Lovers Lane as well as financial records. During the search of the Decatur Street property, five pounds of marijuana and $58,000 in cash were seized. Claimant Munson was arrested during the searches and was

allegedly advised of his constitutional rights by Senior Investigator Allen. He allegedly admitted to selling marijuana and being a heroin user. During his arrest, a small quantity of heroin was allegedly seized from claimant's wallet.

Claimant and other defendants were later charged in 14 separate indictments in Putnam County Court with conspiracy and distribution and possession of heroin and marijuana. Following the indictments, the parties agreed to stay the forfeiture proceedings pending final resolution of the criminal proceedings.

The criminal indictments were apparently dismissed due to the failure to corroborate the evidence presented to the grand jury. Two new indictments were brought against Mr. Munson charging distribution of marijuana. Those charges were dismissed by the Putnam County Supreme Court as well for similar reasons. We note that Munson has two prior convictions for sale and possession of small amounts of drugs for which he received probation. The present motions were then filed, and the court granted a request to stay discovery pending disposition of this motion.

## II. DISCUSSION

Before the court today are motions to dismiss brought by claimant Munson and claimant Richard Robbins, Munson's brother-in-law who is half-owner of the Decatur Street property and claims to be an innocent owner of that property. Claimant Robbins joins in Munson's motions adopting his positions and also raises an innocent owner defense to the forfeiture of his half interest in the Decatur property. Claimant Munson makes three arguments: 1) the court lacks subject matter jurisdiction in that the government never obtained or executed arrest warrants for the defendant properties, a condition precedent to properly exercising in rem jurisdiction; 2) the complaint does not allege facts with particularity to support a finding of probable cause to forfeit the defendant properties; 3) the burden of proof imposed by 19 U.S.C. § 1615 is unconstitutional.

Claimants also move to suppress certain wiretap evidence arguing that it was gathered in violation of state law minimization requirements, no probable cause existed (due to unsubstantiated hearsay), and its acquisition from state officials was a violation of law. Evidence relating to state court indictments should be suppressed, claimants argue, because People provided the grand jury with duplicate tape recordings that had never been sealed by court order. The post-arrest statements require suppression, they argue, because they were obtained in violation of Munson's right to remain silent and right to an attorney.

As a preliminary matter, we note that an acquittal on criminal charges (or a dismissal) does not bar a civil forfeiture action arising out of the same facts on which the criminal action was based. *U.S. v. United States Currency in Amount of $228,536*, 895 F.2d 908, 916 (2d Cir.), *cert. denied*, 495 U.S. 958, 110 S.Ct. 2564, 109 L.Ed.2d 747 (1990).

## A. SUBJECT MATTER JURISDICTION: VALIDITY OF IN REM SEIZURE

Claimants argue that no in rem jurisdiction exists because the government never sought or obtained a warrant for the arrest of the defendant properties and no seizures have been made. In short, no execution of process has been made on the properties themselves.

The government argues that in cases of real property, no actual seizure is required. It points to language in *Republic National Bank of Miami v. United States*, — U.S. ——, 113 S.Ct. 554, 121 L.Ed.2d 474 (1992), relied upon by claimant, that says "that the court must have actual or constructive control of the *res* when an *in rem* forfeiture suit is initiated." Thus, the government contends, since invalid seizures do not immunize a property from forfeiture, *see U.S. v. All Assets of Statewide Auto Parts*, 971 F.2d 896, 905 (2d Cir.1992), neither should the absence of a seizure, particularly since courts do not favor actual seizures because of their drastic nature. So long as some government action has given it constructive control over the property, the *in rem* proceeding is proper. The government uses as an example the Marshals posting a warrant on the property

or the filing of a lien against it. Under these circumstances, the real property has, in effect, been brought under the court's jurisdiction. The government stresses that the Second Circuit has held that "the government may initiate a forfeiture proceeding of real property containing a home without a seizure by filing a complaint and protecting against the transfer of the property by filing a lis pendens." *U.S. v. Premises and Real Property at 4492 South Livonia Road,* 897 F.2d 659, 661 (2d Cir.1990).

In *Livonia Road,* the Second Circuit held that notice and a pre-seizure adversarial hearing are required before the government may seize residential property. *Id.* at 660. As noted above, however, the court further held that this did not preclude the government from initiating a forfeiture proceeding by filing a complaint and protecting against the property's transfer by filing a lis pendens. *See also U.S. v. $3,000,000 Obligation of Qatar Nat'l Bank,* 810 F.Supp. 116, 118 (S.D.N.Y.1993) ("a federal court need not actually exercise control over the res in order to adjudicate rights in it.")

Claimants note that following the *Livonia Road* decision, the U.S. Attorney's Office abandoned its former practice in forfeitures of applying for an "warrant of arrest *in rem*" or an *ex parte* seizure warrant from a magistrate. Now it simply files a complaint and lis pendens and then serves the summons and complaint on the subject. Claimants recognize that this course of action, under present Second Circuit law, does not run afoul of the due process clause since actual seizure has not occurred. But, they argue, it flies in the face of a hundred years of *in rem* jurisprudence by allowing forfeitures to proceed without first seizing the property.

We do not probe this argument since we are bound by the Second Circuit's rulings. Here, the government served a verified summons and complaint on the property and filed notices of pendency in the land records. The Second Circuit in *Livonia Road* explicitly approved this course of action for *in rem* proceedings. Absent further guidance from the appellate court, we must follow their rulings as they now stand.[1]

■ We do note that the Second Circuit's approach does seem to steer a prudent course between the due process clause and current *in rem* jurisprudence. If residential property is seized, due process requires a pre-seizure hearing. To acquire *in rem* jurisdiction, courts require actual or constructive control of the property. By allowing the filing and service of a complaint combined with a lis pendens, the court recognizes that effective control over a property can be secured for purposes of forfeiture without resort to the drastic measure of actually seizing the property from a person. Less drastic alternatives to seizure have been favored by the Second Circuit. *See Statewide Auto Parts,* 971 F.2d at 905. Under current law, we find that we have proper *in rem* jurisdiction over this matter.

## B. ADEQUACY OF COMPLAINT UNDER SUPPLEMENTAL ADMIRALTY RULE E(2)(a) and Fed.R.Civ.P. 12(b)(6)

■ To justify forfeiture of property alleged to be drug related, the government must demonstrate probable cause. *United States v. One 1986 Mercedes Benz,* 846 F.2d 2, 4 (2d Cir.1988). Probable cause must be shown to have existed at the time the forfeiture was instituted. *United States v. $134,-752 United States Currency,* 706 F.Supp. 1075, 1082 (S.D.N.Y.1989).

Claimants argue that the complaint lacks sufficiently particular factual allegations to justify subjecting claimant's family to uncertainty of losing of their home. In short, the complaint fails to allege with sufficient particularity to state a cause of action.

Civil forfeitures are governed by the Supplemental Rules for Certain Admiralty and Maritime Claims (21 U.S.C. § 881(d)) which are part of the Federal Rules of Civil Proce-

---

1. The Second Circuit in *United States v. Aiello,* 912 F.2d 4, 6 n. 1 (2d Cir.1990), *cert. denied,* 498 U.S. 1048, 111 S.Ct. 757, 112 L.Ed.2d 777 (1991), seemed to cite *Livonia Road* approvingly when it stated that "if seizure bringing property within the court's control is not required to initiate the exercise of *in rem* jurisdiction, the surrender of control would not seem to terminate the court's jurisdiction, provided the property remains amenable to the court's process."

dure. *See* Fed.R.Civ.P. A–F. Supplemental Rule E(2)(a) requires that a complaint "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading."

■ Without question, Rule E(2) requires a higher than normal standard of particularity. At bottom, the pleadings must allege sufficient facts to provide a reasonable inference that the government has probable cause to believe that a substantial connection exists between the properties and the exchange of controlled substances. *See United States v. $38,000 in U.S. Currency,* 816 F.2d 1538, 1548 (11th Cir.1987). "The complaint need not allege facts sufficient to support a 'reasonable belief that specific property is tainted,' but facts sufficient to support 'a reasonable belief that the government could demonstrate probable cause' for finding the property tainted." *United States v. TWP 17 R 4,* 970 F.2d 984, 987 (1st Cir.1992).

Claimants contend that the government must allege facts that demonstrate its right to *retain,* not seize initially, the property. They maintain that the pleadings do not do so.

■ Since we must resolve this issue on a motion to dismiss, we cannot dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). We do not test the sufficiency of evidence on motions to dismiss. Likewise, we do not assess the admissibility or weight that should be afforded to evidence. For purposes of this motion, we accept the truth of the factual allegations pled and construe those facts in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Under this standard, we deny claimants' motion.

■ Claimants argue that the unidentified informant's hearsay is insufficient to support a forfeiture claim. In their view, the lack of evidence regarding the informant's

reliability is why the state's original application for eavesdropping warrant was infirm. For same reasons, they argue, the informants cannot support probable cause for this forfeiture.

■ Hearsay reports can be considered, but only if they are found reliable. *U.S. v. Pole No. 3172,* 852 F.2d 636, 639 (1st Cir. 1988). Claimants argue that the informants have been shown unreliable since search of the house produced no large amounts of cash, drug records, paraphernalia, or indicia of drug dealing sufficient to support the criminal indictments against Munson.

■ The government contends that such an argument moves beyond the parameters of review on a motion to dismiss and requires weighing the sufficiency of the evidence. We agree. Determinations regarding the credibility of informants and the strength of evidence seized at claimant's premises are inherently factual inquiries that draw the court outside the four corners of the complaint. The government's complaint, supported by the Martin Affidavit I, alleges that claimant Munson was responsible for the distribution of marijuana and heroin in Putnam and Westchester Counties and that the profits were invested in real estate and businesses. The complaint alleges that a small amount of illegal drugs was found at Lovers Lane and $58,000 in cash and five pounds of marijuana were found at the Decatur Road property. *See* Ver.Compl. ¶ 8–10. It also alleges that claimant admitted selling marijuana. *Id.* at ¶ 8.

Courts have examined supporting affidavits to determine whether they cure a lack of particularity in a complaint. *See U.S. v. Premises and Real Property at 4492 South Livonia Road,* 889 F.2d 1258, 1266 (2nd Cir. 1989); *U.S. v. 288–290 North Street, Middletown, New York,* 743 F.Supp. 1068, 1074–75 (S.D.N.Y.1990). Like the supporting affidavit in the cited cases, the Martin Affidavit I does specify certain dates, locations, circumstances or parties to particular alleged drug transactions.

It is true that much of the information in the Martin Affidavit that derived from three unidentified informants includes only generalized statements regarding Munson's activities. However, the Affidavit does provide

some detail concerning the names of associates and buyers involved in claimant's drug activities and the drug operations (the private telephone and page numbers used to sell drugs, storage of marijuana in the garage at Decatur Road, and the sources of his alleged drug deliveries). The Martin Affidavit also alleges that Informant CI–3 was personally involved in various monitored drug activities with Munson, at least one occurring at Lovers Lane on May 16, 1991. *Id.* at ¶ 18(y). We note that many of the details provided by the three informants, who allegedly knew nothing of each other's existence, were corroborated by each other.

We conclude that taking the complaint's allegations and the allegations included in the Martin Affidavit together, the government has plainly alleged sufficient facts from which the claimants can investigate the facts and frame a responsive pleading. Taken in total and without weighing the evidentiary sufficiency of the allegations, the government's complaint and supporting affidavits apprise the claimants of the scope and nature of their alleged illegal activities and their connection to the defendant properties. We cannot hold as a matter of law that the government can prove no set of facts to support a reasonable belief that it could show probable cause for finding that the properties are tainted by illegal drug activities. Rule E(4)(A) only requires a particularity sufficient to allow the claimants to investigate the matter and frame a responsive pleading. It is clear that claimants can do so based on the complaint and accompanying affidavits. We decline to dismiss on these grounds.

C. MINIMIZATION REQUIREMENT OF C.P.L. § 700.30(7)

Claimants also move to suppress the electronic eavesdropping evidence for violations of the minimization requirements, lack of probable cause, and improper disclosure by state officials. Claimants first argue that the monitoring of the Munson home telephone for 30 days in June and July 1991 violated the minimization requirements imposed by C.P.L. § 700.30(7) and the state court's eavesdropping warrant. They say state law

applies since the wiretap was authorized by a state court order.

■ We note that the Second Circuit has said that federal courts must only apply the stringent state law standards that are related to protecting an individual's privacy rights, and not the procedural rules that are essentially evidentiary in nature. *United States v. Vario,* 943 F.2d 236, 244 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992). The distinction is between pre-tap procedures governing interception of wiretap evidence and post-tap procedures relating to the preservation of evidence. The minimization requirements speak to limiting the invasiveness of the eavesdropping. Such limitations are designed to protect privacy, and therefore these state standards would apply. *See U.S. v. Feola,* 651 F.Supp. 1068, 1097 (2d Cir. 1987), *aff'd without op.,* 875 F.2d 857 (1989).

■ When applying the minimization requirements, the primary question is whether, realistically considered, there was a good faith effort to avoid intercepting conversations unrelated to the crimes being investigated by the terms of the authorizing court order. *People v. Brenes,* 42 N.Y.2d 41, 396 N.Y.S.2d 629, 633, 364 N.E.2d 1322, 1325 (1977). The New York Court of Appeals has suggested that minimization procedures be established and complied with to restrict interception of non-pertinent calls. Though not formally required, the New York Court of Appeals has also expressed a "strong preference" for periodic progress reports to assure judicial supervision and ensure minimization efforts are being made. *See People v. Floyd,* 41 N.Y.2d 245, 392 N.Y.S.2d 257, 264, 360 N.E.2d 935, 942 (1976). Where evidence strongly shows that reasonable minimization efforts were made, lack of progress reports is not fatal. The minimization inquiry depends on the facts and circumstances of each case.

■ This inquiry seems particularly inappropriate for a motion to dismiss. The question of how officers conducted the wiretap, especially the spot monitoring of potentially non-pertinent (and perhaps privileged) conversations and the nature of the periodic

reports is inherently factual. It is not something we shall attempt to resolve on a motion to dismiss.

## D. SUPPRESSION OF WIRETAP EVIDENCE

Claimants contend that proper surveillance logs were not kept and no periodic written progress reports were required by the issuing judge to enable review of the minimization efforts. In his affidavit, Senior Investigator Allen states that Investigator Martin reported to state Judge Braatz on a weekly basis until the Eavesdropping Order expired. Since no review is possible, claimants say the evidence collected from the wiretaps should be suppressed.

■ The officers here were provided two Minimization Plans explaining the procedures to intercept calls. They directed the officers not to listen to or record non-pertinent conversations and permitted "spot" monitoring—brief interceptions at periodic intervals—until a pattern of innocence for certain parties was established. Even if the warrants did not contain the express minimization clause, they may still comply with the New York requirements if they contained specifications as to the persons and topics to be monitored. *Feola*, 651 F.Supp. at 1097. It would appear that the Plans in this case included such specifications.

Claimants note that although 971 calls were intercepted, not one pattern of innocence—when a pertinent party and third party, over the course of several days, never made pertinent calls, regular monitoring gives way to only spot monitoring and finally no monitoring—was established according to the government's records. Munson argues that Kim Munson, his wife, and their 11–year old son were always monitored despite the fact that they had never been found involved in a pertinent conversation. Pointing to allegedly incriminating telephone conversations, the government contends that Kim Munson was involved in, or was at least knowledgeable of, her husband's alleged drug activities.

Claimants say that the officers, in effect, ignored the limitations as explained in the Plans. In particular, they claim that hundreds of innocent, non-pertinent conversations in which Munson was not a party were overheard and recorded. On the logs, claimant says that only 40 of the 791 calls recorded were marked as pertinent. Of the recorded calls, over 230 did not include Munson as a party. In most, Munson's wife was speaking to friends or family. The rest were by his son and house visitors.

■ When assessing minimization, the usual use of the particular telephone and the stage of the investigation are important factors. *Feola*, 651 F.Supp. at 1098. For example, when a telephone is located in the residence of someone believed to be the head of a major drug ring, interception of virtually every call may be legitimate. *Id.* However, "if patterns of non-pertinent calls emerge, their interception, legitimate at first, may be illegitimate." *Id.*

■ The government contests the sampling of calls offered by claimants to support their claim that many of the monitored calls were monitored past the point of necessity. Claimants stress that the log sheets show that the officers, to pay lip service to minimization, would quickly turn off and then on again the tape recording so they could say the machine was turned off but in reality lose little or none of the monitored conversation. If proven true, such conduct would not be the "reasonable efforts at minimization" required. *Scott v. United States*, 436 U.S. 128, 139, 98 S.Ct. 1717, 1724, 56 L.Ed.2d 168 (1978).

Claimants also point out that the officers never made tape counter notations to show how long the tape recorder was on for during the non-pertinent calls. Claimants, however, have not cited any authority for the proposition that absence of such notations justifies the wholesale suppression of wiretap evidence. And in fact, the government's wiretap records do provide the exact running time of the tape machines when monitoring each call. In the supporting Allen Affidavit, the government also outlines the procedures (and reviews by the District Attorney's Office) used to monitor and spot-check the telephone calls from the Munson residence and the efforts made to minimize the wiretap's

intrusiveness. It also disputes the amount of minutes that certain calls were monitored. Resolution of these issues must await an evidentiary hearing or the submission of evidence at trial.

## E. LACK OF PROBABLE CAUSE FOR THE WARRANTS

Claimants next argue that the eavesdropping warrant was not based on probable cause. They contend that all the drug-related information offered about Munson by three unidentified informants was so old (5 months to over a year) as to be stale and that no basis for their allegations against Munson was provided. New York courts have held that warrant affidavits concerning information months old must show that the information is current and not stale. See People v. Loewel, 50 A.D.2d 483, 378 N.Y.S.2d 521, 525–26 (4th Dep't 1976), aff'd, 41 N.Y.2d 609, 394 N.Y.S.2d 591, 363 N.E.2d 316 (1977).

■■■ At the outset, we reject claimants' staleness arguments. The information provided by the three informants ran from April 1990 through January 1991. The wiretap warrant was secured in June 1991. Given the continuous nature of drug conspiracies and the alleged activities of Munson which appeared ongoing, we do not find that the five or six month gap rendered the information stale and necessarily defeats the finding of probable cause. See U.S. v. Rowell, 903 F.2d 899, 903 (2d Cir.1990) (warrant application made two years after information obtained).

In addition, claimants stress that none of the affidavits provided anything but conclusory allegations (e.g., "Joseph Munson regularly gets marijuana from Arizona and Florida.") with no specific details, dates, or personal knowledge. Nor did the warrant application detail why the officer concluded that the informant's allegations were credible. In short, they argue that nothing separates the informants' affidavits supporting the warrant application from rumors and speculation.

■■■ When assessing probable cause on a motion to suppress state-issued wiretap

evidence, a reviewing court must accord substantial deference to the finding of an issuing judicial officer that probable cause existed. U.S. v. Wagner, 989 F.2d 69, 72 (2d Cir.1993). The question becomes whether the issuing judicial officer had a substantial basis for the finding of probable cause. Id. In making this determination, a district court must apply the totality-of-the-circumstances test outlined in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), despite the existence of a stricter state standard for admissibility. See U.S. v. Rowell, 903 F.2d at 902. A court must determine whether the wiretap application satisfied the requirements of the federal wiretap statute, 18 U.S.C. § 2518, as applied by the totality-of-the-circumstances probable cause standard. Wagner, 989 F.2d at 71. Prior convictions, and Munson had two, are relevant to the assessment of probable cause. Id. at 73.

■■■ The key question in assessing probable cause based upon an informant's information is whether the information is reliable. Id. at 72. Reliability can rest on the informant's track record of providing reliable information or if it is materially corroborated by independent evidence. Id. at 72–73.

■■■ Claimants characterization of the Affidavit as mere speculation and rumor is not quite accurate. As we discussed earlier, besides the general allegations of drug activities, the Martin Affidavit provides details concerning associates and buyers involved in claimant's drug activities. Through information offered by informants, it also details aspects of Munson's alleged drug operations including the telephone numbers for a private telephone and pager that were used to sell drugs, the storage of drugs at Decatur Road garage, and names of certain sources of Munson's drugs. The Affidavit also details Munson's contacts with certain individuals suspected of drug activities, often using the telephone at the Munson residence. Calls by Munson to individuals identified by the informants as co-conspirators were documented by pen register data. This tended to corroborate the informants' information. Id. at 74.[2]

2. We also note that the Martin Affidavit satisfied the requirement that other investigative techniques had been tried and failed or appeared too dangerous or unlikely to succeed. The Munson

In addition, CI–3 participated in a monitored drug-related telephone conversation with Munson, purchased drugs from Munson during a monitored transaction, and allegedly obtained a sample of marijuana from Munson at his Lovers Lane residence during a partially monitored transaction. Further, CI–3's statements that he purchased drugs from Munson and CI–2's statement that he was a competitor of Munson in drug distribution, made against their penal interests, also tend to indicate their reliability. *See Rowell,* 903 F.2d at 903.

It is our rough impression that probable cause existed for the wiretap warrant. More importantly, claimants at present have not offered sufficient reason or evidence to justify overruling the state court's determination of probable cause. The state court found the informants sufficiently reliable. The present record does not cast any substantial doubt on the basis for its finding. Claimants' dismissal motions are denied on this ground.

## F. DISCLOSURE VIOLATIONS

■ Claimants also challenge the use of the wiretap evidence because it was provided to the U.S. Attorney's Office for use in a civil forfeiture action. They contend that use of evidence collected pursuant to a state court-authorized wiretap is limited to those uses permitted by C.P.L. § 700.65(1)–(4), and disclosure to government attorneys for a civil action is not specified.

■ As claimants noted earlier, federal law governs the post-intercept use of wiretap evidence. *See Vario,* 943 F.2d at 244. Section 2517(3) of Title 18 provides:

Any person who has received, by any means authorized by this chapter, any information concerning a wire or oral communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath of affirmation in any proceeding

held under the authority of the United States or of any State or political subdivision thereof.

Section 2517(1) allows disclosure of wiretap evidence by any investigative or law enforcement officer to "another investigative or law enforcement officer to the extent such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure." Since receipt and use of wiretap evidence is plainly appropriate for Assistant United States Attorneys prosecuting a civil forfeiture proceeding, disclosure of wiretap evidence to them would seem covered by § 2517(1).

■ Claimants argue that an Assistant United States Attorney ("AUSA") working on a civil forfeiture does not fall within the definition of "investigative or law enforcement officer." We do not agree. Section 2510(7) defines "[i]nvestigative or law enforcement officer" as "any officer of the United States . . . . who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter, and any attorney authorized by law to prosecute or participate in the prosecution of such offenses."

AUSAs, whether working on criminal or civil matters, certainly fall within this definition. Regardless of the actual division of work within the United States Attorneys Office, there is no doubt that all AUSAs are empowered to investigate, prosecute, or at least participate in a criminal prosecution. Section 2510(7) does not distinguish on the basis of what type of case an attorney happens to be working on at a given time.

Claimants recognize that this court has found admissible state authorized wiretap evidence in a federal civil forfeiture action. *See U.S. v. 35 Fulling Avenue, Tuckahoe, New York,* 772 F.Supp. 1433 (S.D.N.Y.1991). In *35 Fulling Avenue,* the court ruled that the federal statute authorizing disclosure of wire-

home was set back from the road in an isolated area. A surveillance system guarded the property. And Munson was allegedly known to deal only with individuals who he personally knew for some time. Hence, the government believed it

could not penetrate the alleged organization with undercover agents. Such facts would support the need for a wiretap. *See U.S. v. Wagner,* 989 F.2d 69, 74 (2d Cir.1993).

tap evidence, 18 U.S.C. § 2517[3], covered the disclosure of state-authorized wiretap evidence in federal court. 772 F.Supp. at 1436–37.

Without explicitly saying so, it would appear that the court's decision rested on some notion of supremacy of the federal disclosure statute over the state statute. The court stated, "This Federal Statute is a part of the paramount law of the nation and is adequate to cover the use of the electronic surveillance in the manner said to have taken place in this case." *Id.*[4]

Claimants argues that this holding was erroneous because the evidence was obtained pursuant to a state warrant and state law governs the disclosure of state authorized wiretap evidence. As we noted above, post-intercept use of state-authorized wiretap evidence in federal court would be governed by federal law. Claimants' argument is thus unavailing. The disclosure of the wiretap evidence did not violate the federal wiretap laws.

## G. GRAND JURY INDICTMENT

Claimants contend that evidence showing that Munson was indicted by a grand jury in New York must be suppressed because the People used duplicate, unsealed tape recordings before the grand jury. This, say claimants, violated C.P.L. § 700.65(3) which requires that all tapes presented to a grand jury must be properly sealed. The government apparently presented duplicate, unsealed tapes without permission from the court when the original tapes had been sealed by court order. Only original, sealed tapes may be used before a grand jury. The failure to do so taints the indictment itself, argue claimants, and thus the indictment should not stand as evidence in the forfeiture action.

Once again, despite recognizing the holding such cases as *United States v. Sotomayor*, 592 F.2d 1219, 1226 (2d Cir.), *cert. denied*, 442 U.S. 919, 99 S.Ct. 2842, 61 L.Ed.2d 286 (1979), claimants seek to apply state law to the post-intercept sealing procedures and use of wiretap evidence. "[R]ules pertaining to the admissibility of evidence are ordinarily governed by the law of the forum." *Id.* at 1225. The *Sotomayor* court then held that the sealing requirements are post-intercept procedures relating solely to the preservation of evidence to which state law is not binding in federal court. *Id.* at 1226. We follow this course.

 Claimants recognize that 18 U.S.C. § 2517(3) permits disclosure "in any proceeding held under the authority of the United States." Courts have held that a grand jury proceeding is covered by this provision. *See, e.g., United States v. Marion*, 535 F.2d 697, 707 (2d Cir.1976). The purpose of sealing requirements is obviously to insure the integrity of the tapes. *United States v. Diana*, 605 F.2d 1307 (4th Cir.1979), *cert. denied*, 444 U.S. 1102, 100 S.Ct. 1067, 62 L.Ed.2d 787 (1980). When unsealed tapes are challenged, the government has an opportunity to provide a "satisfactory explanation" for the failure to seal. *See id.*

 The government maintains that no tampering or adulteration occurred (the tapes were recorded from the originals daily, placed in a vault, and turned over to the district attorney's office when the monitoring finished). It is certainly possible that the procedures actually used by the government satisfied the purpose of the sealing requirement and did not represent a deliberate evasion of the sealing requirements to secure some tactical advantage. If so, exclusion of the wiretap evidence would not be necessari-

3. Section 2517 reads in part:
 (1) Any investigative or law enforcement officer who ... has obtained knowledge of the contents of any wire oral or electronic communication, or evidence derived therefrom, may disclose such contents to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.

(2) Any investigative or law enforcement officer who ... has obtained knowledge of the contents

4. Without explanation, the court also interpreted the New York statute as permitting such "collateral use" of the state-authorized wiretap evidence in a federal forfeiture proceeding. *U.S. v. 35 Fulling Avenue, Tuckahoe, New York*, 772 F.Supp. 1433, 1436 (S.D.N.Y.1991).

ly required. *See id.* Resolving such issues is beyond the purview of a motion to dismiss. Moreover, claimants have offered nothing to suggest any tampering or alteration of the tapes occurred. At this point, they have not demonstrated any likelihood of suffering any prejudice that would justify holding the tapes or the indictment inadmissible.

## H. POST–ARREST STATEMENTS

Claimant Munson argues that Munson's post-arrest statement must be suppressed because no knowing and intelligent waiver of his *Miranda* rights was made. He points out that no written waiver was made and the government has not indicated that Munson was advised of his rights or that a knowing waiver was made. Claimant contends that a hearing is required pursuant to 18 U.S.C. § 3501(a) at which the government must show the statements' admissibility.

In his supporting affidavit, Senior Investigator Allen states that Munson was advised of his constitutional rights under *Miranda* before he made his post-arrest statements. *See* Allen Aff., ¶¶ 19–20.

■ The voluntariness of Munson's post-arrest statements and whether he was advised of his constitutional rights are clearly factual issues not subject to resolution on a motion to dismiss. However, nothing suggests that the warning was insufficient or the statements were made involuntarily. If such an issue is raised by claimant Munson, perhaps it will require resolution at an evidentiary hearing or at trial when the court can assess the evidence concerning these issues. For the moment, however, they form no grounds for dismissal or suppression of the indictment as evidence.

## I. CONSTITUTIONALITY OF 19 U.S.C. § 1615's BURDEN OF PROOF

Lastly, claimant Munson argues that the burden of showing by probable cause that property having a nexus with illegal drug activity violates claimant's due process rights under the fifth amendment. Confining this argument to the forfeiture of his home, claimant urges that a clear and convincing

evidence standard be set for forfeiture of a personal residence.

■ Claimant concedes that the Second Circuit considered such a challenge in *U.S. v. 228 Acres of Land,* 916 F.2d 808, 814 (2d Cir.1990), *cert. denied,* 498 U.S. 1091, 111 S.Ct. 972, 112 L.Ed.2d 1058 (1991), and rejected the argument. Despite claimant's efforts to show other districts adoption of the clear and convincing standard for comparable statutes, we follow the Second Circuit's ruling. Section 1615 is not unconstitutional because of its probable cause standard. We refuse to dismiss the complaint on such grounds.

As a final matter, we deny claimant Robbins' motion to dismiss based upon the innocent owner defense. The government alleges that the proceeds of drug transactions were used to purchase the Decatur property. On a motion to dismiss, we assume the truth of that allegation. The status of Robbins as an innocent owner is bound up with factual questions that may be resolved on a motion for summary judgment at the conclusion of discovery, or perhaps at trial.

## III. CONCLUSION

For the foregoing reasons, we deny the claimants' motions to dismiss in all respects.

SO ORDERED.

